# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ASA S. FOREMAN, )<br>a/k/a Asa S. Forman, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>TERESA DELORIS ELAM, et al., )<br>)<br>Defendants. ) | No. CIV 18-071-RAW-SPS |

## OPINION AND ORDER

This action is before the Court on Defendants' motion to dismiss. The Court has before it for consideration Plaintiff's complaint (Dkt. 2), Defendants' motion (Dkt. 15), and Plaintiff's response (Dkt. 18). Plaintiff, who is represented by counsel, is a prisoner in the custody of the Oklahoma Department of Corrections (DOC) who is incarcerated at Lawton Correctional Facility in Lawton, Oklahoma. He brings this action under the authority of 42 U.S.C. § 1983, seeking relief for alleged constitutional violations during his incarceration at Jess Dunn Correctional Center (JDCC), Joseph Harp Correctional Center (JHCC), and Jackie Brannon Correctional Center (JBCC).

The defendants are Teresa Deloris Elam, L.P.N, JDCC Nurse; Robert Richard Edde, M.D., JDCC Physician; Michelle Lehnus, JDCC Medical Services Administrator; Robert Cornel Balough, M.D., JHCC Physician; Joel Brent McCurdy, M.D., DOC Director of Medical Services; Heather Hasenmeyer a/k/a Heather Hansmeyer, P.A., JDCC Physician Assistant; J. Marlar, M.D., OSP Physician; Jonna Perry, JBCC Case Manager; and David

Summers, JBCC Sergeant.

Plaintiff alleges the defendants were deliberately indifferent to his medical needs with regard to a chronic foot condition and following a stroke, and he complains of prison overcrowding and understaffing, all in violation of the Eighth Amendment. Plaintiff further asserts the defendants retaliated and discriminated against him in violation of the First and Fourteenth Amendments because of his race and because he filed numerous grievances. He is seeking money damages and equitable relief.

As an initial matter, the Court notes the complaint is disorganized and repetitive. Petitioner is represented by counsel and, therefore, is not entitled to the same liberal construction of his pleadings as those of a pro se litigant. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers"); *Sullivan v. Rios*, No. CIV-15-67-M, 2015 WL 4926475, at *4 (W.D. Okla. June 12, 2015) (unpublished) (refusing to give liberal construction "[b]ecause the petition is counsel's work-product, [and] it must be read as written").

**Standard of Review**

The pleading standard for all civil actions was articulated in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). To avoid dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. A court must accept all

the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the plaintiff. *Id*. at 555-56. "So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," the cause of action should be dismissed. *Id*. at 558.

**Request for Release from Custody**

Plaintiff claims his sentence violates the constitutional prohibition against double jeopardy, and he asks for release from custody to provide his own medical care (Dkt. 2 at 32). This form of relief is not available in a civil rights action pursuant to § 1983. Such claims for release must instead be presented in a separate habeas corpus petition after exhaustion of all state court remedies. *See Coleman v. Thompson*, 501 U.S. 722, 731 (1991); 28 U.S.C. § 2254(b).

**Tort Claim**

Defendants assert Plaintiff appears to assert a tort claim related to medical treatment, although the allegations are unclear (Dkt. 2 at 16). Nonetheless, to the extent he is asserting tort claims against individual defendants, Defendants maintain the claims must fail as a matter of law.

In his response to the motion to dismiss, Plaintiff denies having asserted a state-law tort claim in this action. (Dkt. 18 at 3-4). Therefore, the Court will not consider this alleged claim.

**Eleventh Amendment Immunity**

Plaintiff has asserted claims against the defendants in their official capacities. (Dkt. 18 at 13). An official-capacity claim against an Oklahoma official is actually a claim against the State of Oklahoma. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1988). Absent a waiver by the state, or a valid congressional override, the Amendment bars a damages action against a state in federal court. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

Here, the defendants have not waived their Eleventh Amendment immunity. Therefore, the defendants in their official capacities are dismissed from this action. Because the Eleventh Amendment involves sovereign immunity, the official-capacity claims are dismissed "without prejudice" rather than "with prejudice." *Rural Water Sewer & Solid Waste Mgmt., Dist. No. 1, Logan Cnty., Okla. v. Guthrie*, 654 F.3d 1058, 1069 n.9 (10th Cir. 2011).

Plaintiff alleges in his response to Defendants' motion that the official-capacity claims "are only for perpective [sic] relief." (Dkt. 18 at 13). To the extent Plaintiff is seeking injunctive relief against Defendants in their official capacities, as discussed below, those claims must fail as there are no ongoing constitutional violations. *See Green v. Mansour*, 474 U.S. 64, 73 (1985).

**Medical Deliberate Indifference**

Plaintiff alleges Defendants failed to provide him with adequate medical care following a stroke, and Defendants did not provide proper shoes and treatment of a foot condition. The complaint, however, indicates proper medical care was provided, and at most there was a difference in medical opinion.

Plaintiff specifically alleges that at 6:45 a.m. on April 27, 2016, while housed at JDCC, he informed Defendant Nurse Elam that he believed he had suffered a stroke. (Dkt. 2 at 4, 11). Elam stated she did not believe he had had a stroke and instructed him to lie down until the doctor arrived at 8:30 a.m. *Id*. at 4-5, 11. Plaintiff alleges that while lying in his bunk, he had another stroke. *Id*. at 5, 11. Defendant Dr. Edde saw Plaintiff and sent him to Lindsay Memorial Hospital for treatment. *Id*. at 5, 11. Although Plaintiff was referred to OU Medical Center, the trip was not approved, so Plaintiff apparently was returned to JDCC. *Id*. at 5.

The next day, on April 28, 2016, Defendant Hasenmeyer, a JDCC Physician Assistant, prescribed aspirin for Plaintiff. *Id.* Plaintiff claims this treatment was evidence of deliberate indifference to his medical needs, because the aspirin increased his odds of further complications. *Id.* He also claims the ibuprofen prescribed by Defendant Dr. Edde had caused his bowels to be black from internal bleeding. *Id*. at 11.

On April 29, 2016, Plaintiff allegedly suffered another stroke and an aneurism at the facility. *Id*. at 5. He was transferred to Muskogee Regional Medical Center and then to

St. John Medical Center in Tulsa, where he was in ICU for approximately four days. *Id.* at 5, 11. After discharge, he was transferred to JHCC for specialized care. *Id.*

With respect to Plaintiff's feet, he alleges his toenails were treated and removed eight times, because of problems caused by his shoes. *Id.* at 6-7. Special shoes were ordered, but he did not get them until he had been transferred to JHCC. *Id*. at 7. He speculates that this delay probably contributed to his stroke. *Id*. He does not, however, claim he was denied medical treatment for this issue.

Plaintiff also complains he should have received additional treatment after his stroke, and he should have been hospitalized at OU Medical Center before returning to JDCC. *Id.* at 11. He further criticizes the care he received from non-DOC healthcare providers after the stroke. *Id*. at 15. Regarding his feet, Plaintiff suggests that he should not have had his toenails removed eight times. *Id.* at 9. Plaintiff bases his claims upon the opinions of other physicians (Drs. Kershen and Ellis) whom Plaintiff asserts disagreed with the treatment Defendants provided. *Id*. at 7-10, 13-15.

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court addressed the Eighth Amendment prohibition against cruel and unusual punishment in the context of medical attention:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how

6

> evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under §1983.

*Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (citations and footnotes omitted).

Deliberate indifference involves both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A prisoner first must produce objective evidence that the deprivation at issue was in fact "sufficiently serious." *Id*. (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "A medical need is serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996) (internal quotation marks omitted). The subjective component is met if a prison official "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*.

With this standard in mind the Court is of the view that the acts complained of do not show deliberate indifference to Plaintiff's medical needs as alleged. It is clear from the record that medical care was provided. Where there is such evidence of a "series of sick calls, examinations, diagnoses, and medication . . . it cannot be said there was a 'deliberate indifference' to the prisoner's complaints." *Smart v. Villar*, 547 F.2d 112, 114 (10th Cir. 1976). To the extent plaintiff is complaining about the inadequacy of medical care provided, the Court finds Plaintiff is merely asserting a difference of opinion as to the

7

kind and quality of medical treatment necessary under the circumstances. It is well settled that this type of disagreement fails to give rise to a cause of action under § 1983. *See McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977), *cert. denied*, 435 U.S. 917 (1978), and cases cited therein. To the extent plaintiff is complaining of a delay in his treatment, "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference which results in substantial harm." *Olson v. Scotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (quoting *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)). After careful review, the Court finds Plaintiff has not stated a claim for deliberate indifference to his serious medical needs.

**Foot Infection**

Plaintiff alleges he suffered form foot infections caused by ingrown toenails in December 2015. (Dkt. 2 at 7-8). Defendants allege this claim is barred by the two-year statute of limitations for civil rights actions in Oklahoma. *See Meade v. Grubbs*, 841 F.2d 1512, 1522 (10th Cir. 1988).

Plaintiff argues in his response to the motion to dismiss that because the toenail infection contributed to his strokes on April 27, 2018, the strokes "revived" the statute of limitations for bringing this speculative claim, (Dkt. 18 at 10). He, however, has cited no authority for this calculation.

This action was filed on March 6, 2018, after the December 2017 filing deadline had passed. Therefore, this claim is barred from review.

**Overcrowding and Understaffing**

Plaintiff also is seeking relief from prison overcrowding and understaffing, citing the pending lawsuits of other inmates and the actions of the DOC Director and various prison wardens. (Dkt. 2 at 29-32). Plaintiff's complaint, however, only names DOC medical staff and other facility employees as defendants.

Plaintiff asserts in his response to the motion to dismiss that "prison overcrowding is not limited to a single actor in the State, but contributed directly to a scheme of actors, the State." (Dkt. 18 at 10). He has not submitted any authority for this theory of the case.

A public official cannot be individually liable, unless an affirmative link can be shown between the official's conduct and the alleged constitutional violation. *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996). To survive a motion to dismiss, it is important "that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (citation omitted) (emphasis in original). Because Plaintiff has failed to articulate which individuals are responsible for the understaffing and overcrowding in the Oklahoma prison system, he has failed to state a claim.

**Discrimination Claim**

Plaintiff alleges Defendant Summers discriminated against him because of his race when Summers used harsh, mocking, and threatening language against him. Plaintiff claims he repeatedly asked to use the restroom, but the OSP officers on duty delayed obtaining the keys and claimed they did not have the keys. The delay continued long enough that Plaintiff urinated on himself. Summers then stated that "if another sergeant were here, we would whoop your ass for pissing on the floor." (Dkt. 2 at 27-28).

To state a claim for race discrimination, Plaintiff must allege sufficient facts to "show the defendants treated him differently than other similarly-situated prisoners." *Brewer v. Gilroy*, 625 F. App'x 827, 838 (10th Cir. 2015) (unpublished) (citing *Fogle v. Pierson*, 435 f.3d 1252, 1261 (10th Cir. 2006)). Plaintiff also is required to show Defendants "were motivated by racial animus." *See Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1269 (10th Cir. 1989) (citing *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977)). *See also Marshall v. Columbia Lea Regional Hospital*, 345 F.3d 1157, 1179 (10th Cir. 2003).

Here, the Court finds the facts in support of this discrimination claim do not demonstrate different treatment of similarly-situated prisoners. The complaint makes no allegation that non-minority prisoners were treated differently or better than Plaintiff when they needed to use the restroom or urinated on the floor.

In his response to the motion to dismiss, Plaintiff contends that "had a white inmate

10

requested to use the restroom then there would not have been a delay" in finding a key to the restroom. (Dkt. 18 at 5-6). Such speculation is insufficient to state a claim. Plaintiff's discrimination claim therefore must be dismissed. *See Straley v. Utah Bd. of Pardons*, 582 F.3d 1208, 1215 (10th Cir. 2009) (rejecting bare equal protection claim that failed to identify a similarly-situated individual who was given more beneficial treatment). *See also Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1323 (10th Cir. 2010) (holding "vague and conclusory allegations, without any specific facts" regarding differential treatment insufficient to support equal protection claim).

**Retaliation Claim**

Plaintiff alleges Defendants Perry and Summers retaliated against him for filing grievances. He specifically claims Perry filed a bogus misconduct against him (Dkt. 2 at 19), and Summers chastised him for urinating on the floor, as discussed above, *id*. at 27-28. Defendants allege that because Plaintiff does not have a constitutional right to the grievance system, his First Amendment retaliation claim fails.

In *Von Halley v. Clements*, 519 F. App'x. 521 (10th Cir. 2013), a prisoner filed a First Amendment retaliation claim against a prison guard, alleging he lost his job in the prison laundry in retaliation for filing grievances. The Tenth Circuit held that, because the prisoner "has no constitutional right to file a grievance, he cannot show he engaged in constitutionally protected activity required to prove retaliation." *Id*. at 524 (internal quotations omitted). Based on this reasoning, the Court finds Plaintiff retaliation claim

must fail.

**Due Process Claim**

Plaintiff alleges Defendants failed to follow DOC's grievance procedures in violation of his right to due process. He specifically claims that when Defendant Michelle Lehnus answered a Request to Staff addressed to Defendants Edde and Elam, she violated the grievance policy and thus Plaintiff's due process rights. (Dkt. 2 at 6). The Tenth Circuit, however, has held that "there is no independent constitutional right to state administrative grievance procedures." *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011). "Nor does the state's voluntary provision of an administrative grievance process create a liberty interest in that process." *Id.* (citing *Bingham v. Thomas*, 654 F.3d 1171, 1177-78 (11th Cir. 2011).

Defendants assert that DOC operations memoranda and policies are not designed to, and do not confer any additional rights unto any prisoner greater than those authorized by statute or protected by the Constitution. Instead, the procedures are implemented to "aspire to instruct subordinate employees how to exercise discretion vested by the state in the [Director], and to confine the authority of [department] personnel in order to avoid widely different treatment of similar incidents." *Sandin v. Conner*, 515 U.S. 472, 482 (1995).

*Sandin* warned that to find that agency procedures confer a constitutional right in and of themselves "creates disincentives" against implementation of helpful prison

management procedures.  *Id.*, 515 U.S. at 473.  The DOC has created procedures to guide its staff in the day-to-day operations of the agency in situations involving discretion. Those same procedures must not be used to create due process rights beyond what is authorized by the Constitution.  The Court finds Plaintiff's due process rights were not violated by Defendants as a result of Defendant Lehnus' grievance response, and this claim also must fail.

**ACCORDINGLY,** Defendant's motion to dismiss this action for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6) is GRANTED, and this action is DISMISSED in its entirety.  This dismissal shall count as a PRIOR OCCASION or "STRIKE," pursuant to 28 U.S.C. § 1915(g).

**IT IS SO ORDERED** this 28th day of March 2019.

_____
Ronald A. White
United States District Judge
Eastern District of Oklahoma